# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BODIES OUTSIDE OF UNJUST LAWS: ) <br> COALITION FOR REPRODUCTIVE JUSTICE ) <br> & LGBTQ+ LIBERATION; ANDREW THAYER; ) <br> KRISTI KEORKUNIAN; and LINDA LOEW, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> THE CITY OF CHICAGO; TOM CARNEY, in his ) <br> official capacity as Commissioner of the Chicago ) <br> Department of Transportation; and LARRY ) <br> SNELLING; in his official capacity as ) <br> Superintendent of the Chicago Police Department, ) <br> corporation, ) <br> ) <br> Defendants. ) | Case No.: 24-cv-3563 <br><br> Hon. Thomas M. Durkin |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

## INTRODUCTION

In April, the City enacted its "Security Footprint" ordinance, which prohibits people from possessing hazardous items within a designated area during the Democratic National Convention ("DNC") being held in Chicago this August. The ordinance reflects the City's compelling interest in protecting the safety of the public and the tens of thousands of participants and visitors expected to descend on the City during the DNC. Plaintiffs argue that the ordinance is unconstitutionally vague on its face, and they seek a preliminary injunction barring the City from enforcing the ordinance during the convention.

Plaintiffs carry a heavy burden in seeking such drastic relief on the eve of the convention, and they fall far short of meeting it. For one, Plaintiffs lack standing to challenge the ordinance, because the ordinance has not been enforced against them, nor is there any indication that

Plaintiffs will be subject to its restrictions in the future. Second, the kind of pre-enforcement facial challenge Plaintiffs bring here is highly disfavored, with courts preferring to address challenges to allegedly vague laws in as-applied lawsuits brought after a law is applied in a particular situation, and this claim does not present one of the rare instances where a facial challenge can proceed. Third, the ordinance is more than sufficiently clear to survive a vagueness challenge in any event. The face of the ordinance is plain as to the conduct it prohibits, and is of a piece with restrictions on dangerous items that people encounter and understand every day, whether entering a courthouse, government building, or sports arena. Plaintiffs therefore fail to meet their burden of showing a likelihood of success on the merits—a threshold requirement for the extraordinary remedy of preliminary injunctive relief—and their motion should be denied.

## BACKGROUND

The City will host the DNC from August 19-22, 2024. The City enacted its Security Footprint restrictions—specifically, Section II of Ordinance 2024-0008373—in April due to "the compelling need to facilitate safety and order" during the DNC and to "accommodate both Convention-related activities and the interest of persons not participating." Plaintiffs' Ex. (hereinafter, "PX") P at 1. The ordinance authorizes the City's Superintendent of Police—in consultation with the United States Secret Service and the Chicago Office of Emergency Management and Communications—to designate and publicize the boundaries of a Security Footprint, within which it will be unlawful during the convention period to "possess, carry, control, or have immediate access to any item that poses potential safety hazards… including, but not limited to, any item listed in Exhibit A" to the ordinance. *Id.* §§ II (1), (2)(iii). The list of prohibited items in Exhibit A is "incorporated into and made an integral part of" the ordinance, *id.* § II(2)(iii), and includes, *inter alia*, "[s]ealed packages," "[d]rones and other [u]nmanned [a]ircraft [s]ystems," "[m]etal [c]ontainers," "pointed object(s), including knives of any kind,"

2

"[f]irearms," "[t]ents and [s]tructures," and "[a]ny [o]ther [i]tems [d]etermined by Chicago Superintendent of Police, in consultation with the United States Secret Service and the Chicago Office of Emergency Management and Communications, to be Potential Safety Hazards," *id.* at 4.

In Count III of their Complaint (the only count at issue here), Plaintiffs bring a facial vagueness challenge to the ordinance under the Due Process Clause of the Fourteenth Amendment. Plaintiffs allege that the ordinance is "vague on its face" because it "does not give Plaintiffs and others sufficient notice of what conduct is prohibited to allow them to conform their conduct to the law" and "does not contain adequate standards for law enforcement to avoid arbitrary or discriminatory enforcement." Compl. ¶¶ 89-91. On this basis, Plaintiffs move for a preliminary injunction that would bar the City from enforcing the ordinance during the DNC. Pl. Mem. at 5-6.

## STANDARD OF REVIEW

A preliminary injunction "is an extraordinary remedy" that is "never awarded as of right," but only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22-24 (2008). Because it is a "'drastic remedy,'" it "'should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Goodman v. Ill. Dep't of Fin. & Pro. Regul.*, 430 F.3d 432, 437 (7th Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

While Plaintiffs must make the requisite showing on all factors to be entitled to a preliminary injunction,[1] Defendants here address only the likelihood of success on the merits

---

[1] A plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

factor, in accord with the Court's instruction at the June 26, 2024 hearing. *See* Dkts. 22 & 23. And Plaintiffs' burden on that factor is "significant." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). To show the requisite likelihood of success, Plaintiffs must make a "strong" showing that they are likely to succeed on their claim that the ordinance is unconstitutionally vague on its face; "a mere possibility" of prevailing is not enough. *See id.* at 762.

In arguing that their burden is "low," Pl. Mem. (Dkt. 7-1) at 7, Plaintiffs rely on a case, *D.U. v. Rhoades*, 825 F.3d 331, 338 (7th Cir. 2016), that has been superseded. *D.U. v. Rhoades* stated that a plaintiff need only show that its chances of prevailing are "better than negligible," *id.* at 338, but the Seventh Circuit has since repeatedly issued clear "remind[ers] … that the 'better than negligible' standard was retired by the Supreme Court," and a "strong showing" is what is required, *Ill. Republican Party*, 973 F.3d at 762-63; *accord Mays v. Dart*, 974 F.3d 810, 821-22 (7th Cir. 2020). If Plaintiffs do not make a strong showing of a likelihood of success, "then the district court's analysis ends and the preliminary injunction should not be issued." *Adams v. City of Chicago,* 135 F.3d 1150, 1154 (7th Cir. 1998).

**ARGUMENT**

Plaintiffs' facial vagueness challenge under the Fourteenth Amendment is unlikely to succeed—and, indeed, lacks merit altogether—for several reasons. First, Plaintiffs lack standing to bring such a challenge. Second, a pre-enforcement facial vagueness challenge to a statute is highly disfavored by courts, and Plaintiffs' claim does not present one of the rare situations where a facial challenge is allowed to proceed. And third, the ordinance simply is not unconstitutionally vague. Indeed, the ordinance contains more than adequate specificity as to the conduct it prohibits, and that clarity sufficiently restrains enforcement discretion. Because they

4

fail to carry their burden of showing a likelihood of success on the merits of their facial vagueness challenge, Plaintiffs' request for a preliminary injunction should be denied.

I. **Plaintiffs Lack Standing To Challenge The Footprint Ordinance.**

"At the preliminary injunction stage … the plaintiff must make a 'clear showing' that she is 'likely' to establish each element of standing." *Murthy v. Missouri*, No. 23-411, 2024 WL 3165801, at *8 (U.S. June 26, 2024) (quoting *Winter*, 555 U.S. at 22). This requires the presentation of evidence of specific facts, such as by affidavit, rather than reliance on general allegations of injury. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (Sept. 4, 2020).

A necessary element for standing is injury in fact: a plaintiff must show that "she has suffered, or will suffer an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy*, 2024 WL 3165801, at *7 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).[2] And more specifically, for prospective relief such as an injunction, a plaintiff must establish a "sufficient likelihood of future injury." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). The Supreme Court has "repeatedly reiterated" that this future injury must be "*certainly impending*," and that "'[a]llegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Plaintiffs do not establish any bona fide intention to engage in a course of conduct proscribed by the ordinance, let alone that they face a certainly impending threat of injury thereunder. Indeed, they make no showing whatsoever that they intend to carry any item during

---

[2] Facial challenges are no exception. Even a plaintiff bringing the type of First Amendment facial challenge not at issue here "still must demonstrate that she satisfies the constitutional minima essential to establish standing." *Osediacz v. City of Cranston*, 414 F.3d 136, 141 (1st Cir. 2005) (plaintiff lacked standing to assert free speech facial challenge where there was no showing of injury-in-fact).

the DNC that is even arguably prohibited by the ordinance. The most they muster is the bare allegation that they intend to "participate in marches or demonstrations near the United Center on one or more days during the Democratic National Convention." Compl. ¶ 14; *accord id.* ¶ 13. In addition, Plaintiffs may never be subject to the ordinance's restrictions at all because, as they acknowledge, the boundaries of the Security Footprint have not yet been designated, *see* Compl. ¶¶ 63, 65, and Plaintiffs may never go within those boundaries. In short, Plaintiffs do not present any evidence that they face a "certainly impending" injury. *Clapper*, 568 U.S. at 409. And without a "'clear showing,'" *Murthy*, 2024 WL 3165801, at *8 (citation omitted), of a "sufficient likelihood of future injury," *All. for Hippocratic Med.*, 602 U.S. at 381, Plaintiffs lack standing and so are not entitled to a preliminary injunction for that reason alone.

II.     **Plaintiffs' Facial Challenge Should Be Rejected In Favor Of Later Litigating Any As-applied Challenges If The Ordinance Is Enforced Against Plaintiffs.**

Even if Plaintiffs could establish standing, they "chose to litigate … [a] facial challeng[e]"—a "decision [that] comes at a cost." *Moody v. NetChoice, LLC*, Nos. 22-277 & 22-555, 2024 WL 3237685, at *8 (U.S. July 1, 2024). Because "'[c]laims of facial invalidity often rest on speculation'" and "'threaten to short circuit the democratic process' by preventing duly enacted laws from being implemented in constitutional ways," the Supreme Court has "made facial challenges hard to win." *Id.* (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008)). Indeed, facial challenges like this one, which are not brought under the First Amendment, are so "disfavored," that they may be rejected outright, with a claim being proper only once the statute is actually applied in a particular situation, rather than the statute being litigated "in the abstract." *Planned Parenthood of Ind. & Ky., Inc. v. Marion Cnty. Prosecutor*, 7 F.4th 594, 603 (7th Cir. 2021); *accord United States v. Pacilio*, 85 F.4th 450, 458 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 1033 (2024) ("'A vagueness challenge not premised on

the First Amendment is evaluated as-applied, rather than facially.'") (internal citation omitted); *United States v. Calimlim*, 538 F.3d 706, 710 (7th Cir. 2008) (where "the action criminalized… is sufficiently removed from anything protected by the First Amendment," a court "must evaluate it as-applied"); *United States v. Cook*, 970 F.3d 866, 877 (7th Cir. 2020) ("[W]e are not convinced that [plaintiff] is entitled to mount a facial vagueness challenge."). Indeed, as this Court itself recently explained, "[w]here there is no First Amendment interest raised … the statute is judged for vagueness on an as-applied basis." *Khaled v. United States*, No. 21 C 5367, 2022 WL 2073032, at *3 (N.D. Ill. June 9, 2022).[3] The Court should again follow the direction of these cases and reject out of hand Plaintiffs' pre-enforcement challenge to the ordinance and allow the Police Department to enforce that important public safety regulation during the DNC.

### III. Plaintiffs Fail To Show That The Ordinance Is Unconstitutionally Vague On Its Face.

It is exceedingly difficult for plaintiffs to succeed on a vagueness challenge, and this case presents no exception. In general, plaintiffs asserting a facial claim must "establish that no set of circumstances exists under which the [the ordinance] would be valid." *United States v. Rahimi*, No. 22-915, 2024 WL 3074728, at *6 (U.S. June 21, 2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). And with respect to facial vagueness challenges in particular, plaintiffs must show that the statute lacks a "core of understandable meaning." *Trs. of Indiana*

---

[3] Although Plaintiffs gesture at the ordinance "implicat[ing]" the First Amendment, *see* Pl. Mem. at 18-19, *accord id.* 7, 8, they do not develop any argument or make any showing that the ordinance's prohibition on hazardous items in the Security Footprint impacts their speech or assembly rights. And for good reason: The ordinance regulates conduct, not speech, for it merely restricts the "possess[ion] … [of] item[s] that pos[e] potential safety hazards" within a designated area. PX P § II(2)(iii). In contrast to the cases fleetingly cited by Plaintiffs, *see* Pl. Mem. at 18-19, the ordinance does not call for dispersal of groups who may be exercising First Amendment rights, *see Bell v. Keating*, 697 F.3d 445 (7th Cir. 2012), or require advance notice before engaging in First Amendment activity, *see Hynes v. Mayor & Council of Borough of Oradell*, 425 U.S. 610 (1976).

*Univ. v. Curry*, 918 F.3d 537, 540 (7th Cir. 2019); *see also id.* at 541 (under the Supreme Court's approach, "a core of meaning is enough to reject a vagueness challenge, leaving to future adjudication the inevitable questions at the statutory margin"); *Planned Parenthood of Ind. & Ky.*, 7 F.4th at 605 ("[T]o survive this facial challenge, Defendants must only demonstrate that the Statute has a discernable core."). A statute lacks such core when it is infected with "uncertainty so pervasive that most of a law's potential applications are impossible to evaluate." *Curry*, 918 F.3d at 540.

Plaintiffs do not even argue—much less show—that the ordinance is so wholly standardless as to lack any ascertainable "core of understandable meaning." *Id*. And for good reason: there is no question that the ordinance's prohibition on items that "pose[] potential safety hazards," PX P § II(2)(iii), constitutes an ascertainable core of meaning, for it plainly prohibits a multitude of items that ordinary people and police officers understand to present such hazards. Indeed, hazard is the kind of word "people use and understand in normal life." *Curry*, 918 F.3d at 540; *see also id.* ("Even a protean word such as 'reasonable' has enough of a core" to satisfy the Constitution). And to take just two examples, ordinary people would understand firearms and knives to "pose[] potential safety hazards," and thus be prohibited by the ordinance—and if there could be any doubt, both items are specifically included in the illustrative list in Exhibit A to the ordinance. *See* PX P at 4. The same is true of any number of other items specified in Exhibit A to the ordinance. These indisputably "clear-cut" applications of the ordinance are enough to defeat Plaintiffs' facial challenge, because they "constitute a core of [the ordinance] that renders [it] immune from this pre-enforcement facial challenge." *Planned Parenthood of Ind. & Ky., Inc.*, 7 F.4th at 605.[4]

---

[4] Plaintiffs do not allege that the ordinance or its enforcement implicates their First Amendment activity, *see* Compl. ¶¶ 88-91, but even if Plaintiffs *had* mounted a facial challenge implicating the First

Indeed, the ordinance's prohibition of items that "pose[] potential safety hazards" is sufficiently clear to give ordinary people fair notice of the conduct that is prohibited—and thus to comfortably survive a vagueness challenge—even before considering the list of illustrative examples provided in Exhibit A to the ordinance. A statute is not unconstitutionally vague so long as it "define[s] [a] criminal offense (1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement." *Pacilio*, 85 F.4th at 458 (quoting *Skilling v. United States*, 561 U.S. 358, 402-03 (2010)). Perfect clarity is not required. "[B]ecause we are '[c]ondemned to the use of words, we can never expect mathematical certainty from our language.'" *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)). "A statute is not unconstitutionally vague… simply because it does not define every word." *Green v. Anthony Clark Int'l Ins. Brokers, Ltd.*, No. 09 C 1541, 2010 WL 431673, at *5 (N.D. Ill. Feb. 1, 2010).

As courts have explained when reviewing similar laws restricting dangerous activity, "[f]or the standard to be clear, it need not spell out all situations where activity is hazardous," *Jake's Fireworks Inc. v. Acosta*, 893 F.3d 1248, 1258 (10th Cir. 2018), and, as "'[d]anger' can take a number of forms[,] [n]othing requires [the drafters] to substitute the particular for the generic—to give the term more precise content by giving examples or by establishing a laundry list," *United States v. DiVarco*, 602 F. Supp. 1029, 1035 (N.D. Ill. 1985). Indeed, the ordinance's language is of a piece with similar phraseology upheld in other cases, such as a prohibition on handling explosives that constitutes an "undue hazard to life," *Jake's Fireworks Inc.*, 893 F.3d at

---

Amendment, it would remain "disfavored." *NetChoice, LLC*, 2024 WL 3237685, at *17. And for reasons similar to those explained above, it would also fail under the standard applicable in that context: Plaintiffs cannot show "the [ordinance's] unconstitutional applications *substantially outweigh* its constitutional ones." *Id.* at *8 (emphasis added).

1258, a ban on items constituting a "hazardous tool," *Robinson v. Warden*, 250 F. App'x 462, 464 (3d Cir. 2007), and a criminal ban on "dangerous weapon[s]," *Stout v. Dallman*, 492 F.2d 992, 994 (6th Cir. 1974). But the ordinance goes even further by providing a non-exhaustive list of examples, PX P at 4, which merely serves to confirm its constitutionality, *see United States v. Wyatt*, 408 F.3d 1257, 1260-61 (9th Cir. 2005) (the phrase "hazardous and injurious device," accompanied by a non-exhaustive list of examples, was not void for vagueness).

The ordinance and its list, moreover, are akin to prohibitions commonly used and understood across American life, such as when people enter courthouses, government buildings, or sports stadiums. The Supreme Court of the United States, for example, prohibits "pointed objects"—one of the very categories Plaintiffs take issue with here, *see* Pl. Mem. at 19—and its police are further "authorized to determine if any other items" besides those listed "may pose a potential safety hazard." Entering the Building & Prohibited Items, Supreme Court of the United States, https://www.supremecourt.gov/visiting/prohibited-items.aspx. The public is required to abide by similar categories of prohibited items should they wish to enter the Capitol Building, Soldier Field, or the United States District Court for the Northern District of Illinois.[5] Where "challenged language 'is commonly used in both legal and common parlance,' it often will be 'sufficiently clear so that a reasonable person can understand its meaning.'" *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Ct.*, 894 F.3d 235, 247 (6th Cir. 2018)

---

[5] *See, e.g.*, Prohibited Items, Soldier Field, https://www.soldierfield.com/plan-your-visit/prohibited-items (including "[a]nimals," "[p]oles of any kind, including selfie-sticks," "[u]mbrellas," "e-cigarettes," "[a]ny other items deemed to be dangerous or inappropriate"); Prohibited Items, U.S. Capitol Visitor Center, https://www.visitthecapitol.gov/visit/know-before-you-go/prohibited-items (including "[a]ny pointed object," "[e]lectric stun guns," "replica guns," "aersol containers"); Items Not Allowed in Courthouse, United States District Court for the Northern District of Illinois, https://www.ilnd.uscourts.gov/Pages.aspx?page=PlaceinHolding (including "[k]nives," "[g]lass items," "pepper spray, mace," "any other items that… will compromise the security or integrity of the courthouse").

(quoting *Deja Vu of Cincinnati, L.L.C. v. Union Twp. Bd. of Trs.*, 411 F.3d 777, 798 (6th Cir. 2005) (en banc)); *see also Curry*, 918 F.3d at 540 ("It is… hard to see what can be wrong with words… which people use and understand in normal life."). That is the case here.

Finally, given that its language is sufficiently clear and unambiguous, the ordinance contains sufficient guidance to prevent arbitrary or discriminatory enforcement. All that is required is that the ordinance is "not so lacking in standards that it gives a *vast* amount of discretion to the police to enforce it in an arbitrary or discriminatory manner." *United States v. Johnson*, 875 F.3d 360, 371 (7th Cir. 2017) (emphasis added). There is no vast ceding of discretion here. Rather, the same core elements of the ordinance that make its prohibitions "discernable and specific" to the general public also necessarily provide sufficient direction to officers as to when a violation has or has not occurred. *See id.*

### IV. Plaintiffs' Arguments Against The Ordinance Lack Merit.

For all of the above reasons, Plaintiffs do not have a likelihood of success on the merits. Indeed, they offer nothing that amounts to the required strong showing that the ordinance is unconstitutionally vague.

Plaintiffs first argue that the ordinance is vague because it fails to provide sufficient notice of what items are prohibited. Pl. Mem. at 19-20. As just explained, however, the ordinance is more that sufficiently clear. While Plaintiffs argue that "[*s*]*ome* of the prohibited items listed in Exhibit A to the Footprint Ordinance are broad categories with unclear boundaries," *id.* at 19 (emphasis added), that mischaracterizes the list—but, more importantly, even this argument, if true, is insufficient to support a facial challenge because it does not negate the fact that the ordinance has an ascertainable core meaning. Equally important, the case law is clear that "[s]ome uncertainty at the margins does not condemn a statute." *Curry*, 918 F.3d at 540; *see also United States v. Xiao*, 77 F.4th 466, 474 (7th Cir. 2023) ("Laws are not

11

unconstitutionally indefinite … solely because of difficulty in 'determining whether certain marginal offenses fall within their language.'"). Yet Plaintiffs' arguments *only* concern the margins—for example, whether "star-shaped pendants, Epi-pens, and arrow-shaped cardboard protest signs" count as "pointed object(s)" within Exhibit A. Pl. Mem. at 19. Such hypotheticals do not imply, let alone show, that the ordinance is plagued with uncertainty "so pervasive" that "*most* of [the ordinance's] potential applications" are "impossible to evaluate." *Curry*, 918 F.3d at 540 (emphasis added); *see also Rahimi*, 2024 WL 3074728, at *11 n.2 ("[U]nless these hypothetical faults occur in every case, they do not justify invalidating [the law] on its face."). Rather, these are, at best, precisely the type of hypothetical "questions at the statutory margin" that must be left to "future adjudication" in as-applied challenges. *Curry*, 918 F.3d at 541.

Even more, Plaintiffs' hypotheticals take the items listed in Exhibit A to the ordinance in isolation, without reference to the ordinance's core prohibition on "item[s] pos[ing] potential safety hazards." *See* Pl. Mem. at 19-22. But statutes are read "'as a whole' rather than 'as a series of unrelated and isolated provisions.'" *United States v. Pace*, 48 F.4th 741, 753 (7th Cir. 2022), *cert. denied*, 144 S. Ct. 1092 (2024) (quoting *Arreola-Castillo v. United States*, 889 F.3d 378, 386 (7th Cir. 2018)). Thus, even if one of the listed items on Exhibit A to the ordinance were vague in the abstract, that vagueness is cured by construing the item in light of the ordinance's core prohibition on items that pose a "potential safety hazard."[6]

---

[6] For these reasons, *Johnson v. United States*, 576 U.S. 591, 595 (2015), cited by Plaintiffs, *see* Pl. Mem. at 18, does not help them. There, the Court concluded that the definition of "violent felonies" in the residual clause of the Armed Career Criminal Act was unconstitutionally vague. *See Johnson*, 576 U.S. at 597. But, as the Seventh Circuit has since explained, "much of the Court's analysis in *Johnson* deals with a statute that is in key respects *sui generis*," *Cook*, 970 F.3d at 876, and therefore a poor analogue here. Moreover, the Court in *Johnson* did not invalidate the statute on its face in a pre-enforcement setting, but only after observing "[n]ine years" of experience in which courts had "tr[ied] to derive meaning from the residual clause." *See Johnson*, 576 U.S. at 601-02. As the Seventh Circuit has explained, "*Johnson* shows that uncertainty so pervasive that most of a law's potential applications are impossible to evaluate may

12

Next, Plaintiffs contend that the ordinance is vague because the geographic boundaries of the Security Footprint area have not yet been announced. Pl. Mem. at 20. But that does not pose a vagueness problem. For one, the Security Footprint boundaries will be publicly marked and published. PX P § II(1) (authorizing Superintendent to "mark as necessary" the boundaries of the Security Footprint and directing the Chicago Police Department to publicize them on its website). And Plaintiffs cite no case for the proposition that the breadth of geographic reach of a statute renders it vague. Indeed, in contrast to the Security Footprint, which is intended to apply to a limited area near sensitive locations being used for the DNC, *see* PX P § I (defining "Security Footprint"), most City ordinances apply across the entirety of the City's territory, yet that broader reach does not make them vague. Similarly, Plaintiffs briefly contend (again, without citing any caselaw), that the ordinance is vague because it does not contain a *mens rea* requirement. Pl. Mem. at 20. But that does not make the otherwise clear ordinance suddenly vague. The absence of the *mens rea* requirement simply means that the prohibited conduct may not occur, regardless of state of mind—a rule that serves the City's compelling interest in maintaining safety and security in the areas surrounding DNC events.

Plaintiffs fare no better in contending that the ordinance lacks sufficient guidelines to guide the police when enforcing the ordinance. *See* Pl. Mem. at 21-22. As explained above, the ordinance's clear prohibition on items posing a potential safety hazard, combined with the specific list of items, provides a more than sufficient standard for police officers to apply in the field. And because the ordinance has yet to be enforced, Plaintiffs' arguments as to enforcement are purely speculative, *see id.*, as they do not and cannot point to any actual evidence of arbitrary or discriminatory enforcement. *See Gonzales v. Carhart*, 550 U.S. 124, 150 (2007) (explaining

---

rule out enforcement." *Curry*, 918 F.3d at 540. But for the reasons explained herein, Plaintiffs come nowhere close to making such a showing here.

that "[r]espondents' arguments concerning arbitrary enforcement" in a pre-enforcement challenge are "somewhat speculative" because "no evidence has been, or could be, introduced to indicate whether the [law] has been enforced in a discriminatory manner"). Lacking any such evidence, they rest their argument on a misconstrued and out-of-context quote from Chicago Police Department Counterterrorism Bureau Chief Duane DeVries. *See* Pl. Mem. at 22; Compl. ¶¶ 71-72. Plaintiffs suggest that his statement shows the ordinance will be selectively enforced, by not being enforced against residents or businesses falling with the Security Footprint, so as not to inconvenience them. *See* Pl. Mem. at 22. But in actuality, Chief DeVries explained that it would be unlikely that area residents or business would be in the Security Footprint area. Chicago City Council Committee on Public Safety Hr'g, April 11, 2024, 47:24-48:22, available at https://chicityclerkelms.chicago.gov/Meeting/?meetingId=D3F05011-37ED-EE11-904C-001DD806E542. Regardless, Chief DeVries explained that the ordinance would be enforced consistently within the designated area. *Id.* at 48:00-48:22 (explaining that a resident walking a dog would not be permitted within the Security Footprint).

Last, Plaintiffs contend that the ordinance lacks sufficient guidelines because it does not speak to whether it will be enforced through searches or checkpoints, or whether violators will be arrested. Pl. Mem. at 21. But they cite no case suggesting that this is a vagueness problem, and it is not. Indeed, most statutory prohibitions simply denote the prohibited conduct without mention of the particular methods an officer may use in the field to enforce the prohibition, and these are not void for vagueness. *See, e.g.*, *United States v. Burrows*, 905 F.3d 1061, 1066 (7th Cir. 2018) (statute prohibiting receipt of child pornography not unconstitutionally vague); *United States v.*

14

*Deng*, No. 23-3545, 2024 WL 3059630, at *2 (8th Cir. June 20, 2024) (statute prohibiting possession of firearms not unconstitutionally vague).[7]

For all these reasons, Plaintiffs fail to make any showing, much less a strong one, that the ordinance is unconstitutionally vague or will be selectively enforced. If the ordinance is later enforced improperly in a particular instance, or a person believes an officer improperly searched or arrested him in the course of enforcing the ordinance, that person could seek to bring an as-applied challenge at that time. But the unfounded and speculative risk of an improper enforcement of the ordinance does not "jeopardize the entire statute in a pre-enforcement, facial challenge." *Planned Parenthood of Ind. & Ky., Inc.*, 7 F.4th at 605.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' motion for a preliminary injunction.

Date:   July 8, 2024                                    Respectfully submitted,

ANDREW W. WORSECK                              MARY B. RICHARDSON-LOWRY,
ELLEN W. MCLAUGHLIN                             Corporation Counsel for
KATHERINE ROSE LAMB                               the City of Chicago
City of Chicago, Department of Law
2 North Lasalle Street, Suite 520               By:    /s/ Andrew Worseck
Chicago, Illinois 60602                                 Andrew W. Worseck
(312) 744-7129 / 2-5147 / 2-0797                        Deputy Corporation Counsel
andrew.worseck@cityofchicago.org
ellen.mclaughlin@cityofchicago.org
katherine.lamb@cityofchicago.org

*Attorneys for City Defendants*

---

[7] While the City may issue future guidance on the ordinance, its plain language is more than sufficiently clear to guide law enforcement in the exercise of their discretion. Thus, "[w]hether further guidelines, administrative rules, or enforcement policy will clarify the more ambiguous scope of the standard in other respects is of no concern in [Plaintiffs'] facial challenge." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests.*, 455 U.S. 489, 502 (1982).