UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BODIES OUTSIDE OF UNJUST LAWS: COALITION FOR REPRODUCTIVE JUSTICE & LGBTQ+ LIBERATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO, et al., <br><br> Defendants. | No. 24 CV 3563 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs move to enjoin enforcement of Chicago Ordinance 2024-0008373 related to the upcoming Democratic National Convention. R. 6. For the following reasons, that motion is denied.

**Background**

In anticipation of hosting the Democratic National Convention in August 2024, the City of Chicago enacted Ordinance 2024-0008373 (the "Ordinance"). R. 1-1 at 314–17. In relevant part, the Ordinance makes it unlawful for people to bring certain items into the "Security Footprint," a protected area around the Convention sites.[1] *Id.* at 315. Within the Security Footprint, people may not possess "any item that poses potential safety hazards . . . including, but not limited to, any item listed in Exhibit A." *Id.* Exhibit A lists items such as laptops, sealed packages, drones, firearms, ammunition, tents, "[a]ny pointed object(s) including knives of any kind," and "Any

---

[1] The United Center and McCormick Place.

1

Other Items Determined by Chicago Superintendent of Police, in consultation with the United States Secret Service and the Chicago Office of Emergency Management and Communications, to be Potential Safety Hazards." *Id.* at 317.

During the Convention, Plaintiffs intend to enter the Security Footprint area "to participate in marches or demonstrations" in exercise of their First Amendment rights. R. 1 ¶ 13. Plaintiffs contend that the Ordinance is unconstitutionally vague in violation of their Fourteenth Amendment due process rights and that such vagueness will have a chilling effect on their First Amendment rights. R. 9 at 24–28. Plaintiffs thus move to enjoin enforcement of the Ordinance. R. 6.[2] For the reasons stated below, Plaintiffs' motion is denied.

## Discussion

A plaintiff seeking a preliminary injunction must make a "clear showing" that she is likely to establish each element of standing. *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) (citations omitted). She must also establish each element of a preliminary injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (including that the plaintiff is "likely to succeed on the merits"). Here, the Court requested that the parties focus their briefing on whether Plaintiffs could establish a likelihood of success on the merits. As discussed below, whether Plaintiffs have standing is a close call. Regardless, Plaintiffs' claim fails because they cannot establish a likelihood of success on the merits.

---

[2] Plaintiffs raised additional issues in their motion for a preliminary injunction. R. 6. The parties resolved these other issues by way of settlement and the constitutionality of the Ordinance is the sole remaining issue.

I.  **Standing**

Injury in fact is a necessary element for standing and to obtain prospective relief such as an injunction, a plaintiff must establish a "sufficient likelihood" that a future injury will occur. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). The Supreme Court has "repeatedly reiterated" that the future injury must be "certainly impending," and that "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations omitted). To establish a certainly impending future injury, a plaintiff must present evidence of specific facts, such as by affidavit, rather than general factual allegations of injury. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020).

Here, Plaintiffs allege future injury under a vagueness claim. "A vagueness claim alleges that, as written, [a] law either fails to provide definite notice to individuals regarding what behavior is criminalized or invites arbitrary and discriminatory enforcement—or both." *Bell v. Keating*, 697 F.3d 445, 455 (7th Cir. 2012). "Although it derives from the Fourteenth Amendment, a statute that is vague may implicate a plaintiff's First Amendment rights." *Id.* When "an imprecise law implicates speech and assembly rights," a plaintiff may "facially challenge a statute as void for vagueness." *Id.* In this context, under a vagueness claim, a plaintiff has standing when she can establish a First Amendment "chill" and "consequential injury." *See Penny Saver Publications, Inc. v. Vill. of Hazel Crest*, 905 F.2d 150, 155 n.2 (7th Cir. 1990).

3

As stated above, Plaintiffs intend to participate in marches or demonstrations within the Security Footprint during the Convention, and they argue that the vagueness of the Ordinance will have a chilling effect on their ability to exercise these rights. Plaintiffs provide affidavits stating, for example, that they intend to bring pens, first aid kits containing scissors, and "protest buttons that attach with a pin in the back" into the Security Footprint. R. 26-1 ¶ 8; R. 26-2 ¶ 8; R. 26-3 ¶ 8. Plaintiffs claim to not know whether these items would be prohibited under the Ordinance as "pointed objects." *Id.* According to Plaintiffs, due to this uncertainty, they do not know how to participate in the protests without violating the law. *See* R. 26 at 6 ("Protesters here face [a] dilemma: avoid protests near the United Center during the [Convention] or else risk punishment [under the Ordinance].").

The Court is hesitant to find that Plaintiffs have standing based on these facts. Simply put, if Plaintiffs show up to the protests with pens, first aid kits, and protest buttons, they are unlikely to face punishment. It is likely that Plaintiffs will be asked to discard certain items (such as the scissors) before they are allowed entry into the Security Footprint, just as happens at airports on a daily basis. This would not constitute a First Amendment injury as Plaintiffs would, upon discarding such innocuous items, likely be allowed entry into the Security Footprint with the subsequent ability to exercise their First Amendment rights. There does not appear to be a "certainly impending" future injury.

That said, Plaintiffs have minimally articulated a theory of injury consistent with the general principles of a vagueness claim. *See Penny Saver Publications, Inc.*,

4

905 F.2d at 155 (standing conferred where "[b]ecause of this uncertainty, advertisers were apparently chilled in exercise the exercise of their first amendment rights"). Additionally, the Convention begins in less than one month and the Court anticipates that Plaintiffs may appeal this decision.[3] The Court will address their motion on the merits for the sake of efficiently resolving this case prior to the Convention.

## II. Likelihood of Success on the Merits

First, Plaintiffs argue that the Ordinance is vague because it "does not provide sufficient notice of the prohibited conduct." R. 26 at 8–12. On this point, the Constitution requires that the Ordinance have a "core of understandable meaning." *Trustees of Indiana Univ. v. Curry*, 918 F.3d 537, 540 (7th Cir. 2019). Some "uncertainty at the margins does not condemn a statute." *Id.* Rather, the uncertainty must be "so pervasive that most of a law's potential applications are impossible to evaluate." *Id.* The "inevitable questions at the statutory margin" should be left to "future adjudication." *Id.* at 541.

Plaintiffs take issue with the phrase "potential safety hazard" and argue that the word "hazard" is not sufficiently defined. R. 26 at 8. But words are sufficiently defined where an ordinary person would "use and understand" those words in "normal life." *Curry*, 918 F.3d at 540 ("Even a protean word such as 'reasonable' has enough of a core to allow its use in situations where rights to speak are at issue."). So

---

[3] The Ordinance was enacted on April 17, 2024. R. 1 ¶ 63. Plaintiffs filed this case and moved for a preliminary injunction on May 2, 2024. R. 1; R. 6. Between May 2 and June 26, the parties engaged in settlement negotiations through which they resolved two of the three issues set forth in Plaintiffs' motion. *See* R. 6. On June 26, 2024 when the parties indicated they would be unable to resolve the final issue regarding the Ordinance, the Court set an expedited briefing schedule. R. 23.

5

too here, an ordinary person understands what a "hazard" is in the context of their everyday life. What's more, the Ordinance supplements and clarifies the phrase "potential safety hazard" with a detailed list of prohibited items set forth in Exhibit A. As Defendants point out, this list is similar to prohibitions commonly used and understood across American life such as when people enter sports stadiums, courthouses, and government buildings. *See* R. 24 at 10 (citing lists of prohibited items for Soldier Field, the Dirksen Federal Building, and the U.S. Capitol Building). Indeed, courts have previously upheld similar uses of the word "hazard" as constitutional. *See, e.g., Jake's Fireworks Inc. v. Acosta*, 893 F.3d 1248, 1258 (10th Cir. 2018) ("For the standard to be clear, it need not spell out all situations where activity is hazardous."); *United States v. Wyatt*, 408 F.3d 1257, 1260–62 (9th Cir. 2005) (the phrase "hazardous and injurious device," accompanied by a list of examples, was not void for vagueness).

Regarding Exhibit A, Plaintiffs argue the specific prohibition on "any pointed object[s] including knives of any kind" is overbroad because it includes "innocent" pointed objects such as Epi-pens and pencils. R. 9 at 25. Specifically, Plaintiffs intend to bring pens, first aid kits containing scissors, and "protest buttons that attach with a pin in the back" into the Security Footprint and claim to not know whether the Ordinance prohibits such items. R. 26-1 ¶ 8; R. 26-2 ¶ 8; R. 26-3 ¶ 8. Plaintiffs' argument that a protestor would be punished for carrying items such as pens, first aid kits, and protest buttons is well beyond the pale of any reasonable interpretation of the Ordinance. *See Anderson v. Milwaukee Cnty.*, 433 F.3d 975, 978 (7th Cir. 2006)

6

("Common sense must not be and should not be suspended when judging the constitutionality of a rule or statute."). As Defendants point out, this particular phrasing is commonplace and well-understood by ordinary Americans. The Supreme Court of the United States, for example, uses similar language to prohibit "knives of any size and any pointed objects." *See* R. 24 at 10 (citing https://www.supremecourt.gov/visiting/prohibited-items.aspx). Ordinary people understand that items such as protest buttons do not pose safety hazards. At best, this argument identifies some "uncertainty at the margins" best left for an as-applied challenge in future adjudication.[4] *Curry*, 918 F.3d at 540.

Ultimately, the use of the phrase "potential safety hazard" coupled with the list of examples in Exhibit A provides "sufficient definiteness that ordinary people can understand what conduct is prohibited." *Skilling v. United States*, 561 U.S. 358, 402 (2010).

Second, Plaintiffs argue that the Ordinance is vague because it "does not provide sufficient guidance to prevent arbitrary or discriminatory enforcement." R. 26 at 12–13. On this point, the Constitution requires that the Ordinance "establish minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (citations omitted). An ordinance fails to establish minimal guidelines when it "vests virtually complete discretion in the hands of the police to determine

---

[4] As discussed above, if a person is stopped for carrying an item such as pen, first aid kit, or protest button, that person will likely be asked to discard the item and then still be allowed entry into Security Footprint with the subsequent ability to exercise her rights under First Amendment. In the unlikely event that a person carrying these items is charged with violating the Ordinance and then prohibited from entering the Security Footprint, such a case would allow for an as-applied challenge.

7

whether a suspect has satisfied the statute." *Id.* Put another way, an ordinance may not "entrust[] lawmaking to the moment-to-moment judgment of the policeman on his beat." *City of Chicago v. Morales*, 527 U.S. 41, 60 (1999) (citations omitted).

In raising this argument, Plaintiffs rely primarily on *Morales*. R. 26 at 12–13. In *Morales*, the City of Chicago passed an ordinance providing that if a group of two or more people were present in a "public place," and if a police officer reasonably believed that at least one person was a "criminal street gang member" and that the group was "loitering" with "no apparent purpose," then the officer was required to order the group to "disperse." 527 U.S. at 47. The ordinance then made it a criminal offense to decline to obey the order. *Id.* The ordinance allowed officers broad discretion to infer whether a person was in a criminal street gang and whether that person was loitering. *Id.* at 60. The ordinance placed "too much discretion" in the hands of individual officers and thus failed to provide sufficient guidance to prevent arbitrary enforcement. *Id.* at 64.

In contrast to the ordinance in *Morales*, Ordinance 2024-0008373 provides far more guidance to law enforcement officers. The prohibited conduct in Ordinance 2024-0008373 is clearly and sufficiently defined as described above. And, critically, there is no discretion in its application—the Ordinance applies to "any person" who enters the Security Footprint "other than governmental employees in the performance of their duties, or persons duly issued a permit that specifically authorizes the [conduct]". R. 1-1 at 315. It is not applied against any particular person because of the content of their speech. Additionally, the Ordinance does not broadly

8

apply across the entire City of Chicago. The Security Footprint regulations will be in place for just ten days (August 17, 2024 to August 26, 2024) and will be enforced only in the limited area of the Security Footprint. *Id.* at 314–15. For these reasons, the Ordinance establishes clearly defined "minimal guidelines to govern law enforcement" as required by the Constitution. *Kolender*, 461 U.S. at 358. Plaintiffs are not likely to succeed on the merits of their claim.

## Conclusion

For the reasons stated above, Plaintiffs' motion to enjoin enforcement of the Ordinance is denied.

ENTERED:

*Thomas M. Durkin*

Honorable Thomas M. Durkin
United States District Judge

DATED: July 19, 2024

9