

# CITY OF CHICAGO DEPARTMENT OF ADMINISTRATIVE HEARINGS
## MUNICIPAL DIVISION

In re the denial of Parade Permit Application of )
Bodies Outside of Unjust Laws: Coalition for ) 24 PA 00001
Reproductive Justice and LGBTQ+ Liberation )

**BACKGROUND –**

This matter comes before this Administrative Law Judge on Applicant's appeal from the denial of its application for a parade permit on behalf of Bodies Outside of Unjust Laws: Coalition for Reproductive Justice and LGBTQ+ Liberation.

On January 2, 2024, an application for a Parade Permit was filed by Andy Thayer on behalf of Bodies Outside of Unjust laws: Coalition for reproductive Justice + Liberation. The date for the requested permit was August 18, 2024. The parade would assemble at 5:00pm, start at 6:00pm, end at approximately 8:15pm and disband at 9:00pm. The proposed route would start on Pearson east of Michigan Avenue to Michigan Avenue; south on Michigan Avenue to Wacker Drive; west on Wacker Drive to State Street; south on State street to Adams Street; east on Adams to Michigan Avenue; south on Michigan avenue to 9th street and ending at 901 S. Michigan Avenue.

On January 8, 2024, the applicant voluntarily submitted an amendment to this application with respect to the proposed route. This amended route would lessen the length on Michigan Avenue and State Street that the marchers would walk. This amendment also had the marchers going with the flow of traffic on all portions of the route, including one-way streets.

On January 16, 2024, the commissioner of the Chicago Department of Transportation denied this Parade Permit Application for these two reasons:

1. Under Section 10-8-330(g)(1) of the Code, the Commissioner finds that the proposed parade will substantially and unnecessarily interfere with traffic in the area contiguous to the activity, and there are not available at the time of the proposed parade sufficient city services to mitigate the disruption.
2. Under Section 10-8-330(g)(2), the Commissioner finds that there are not available at the time of the parade a sufficient number of on-duty police officers or other city employees, authorized to regulate traffic, to police the public, and to protect parade participants and non-participants from traffic-related hazards because of the other requirements for police protection during the time of the proposed parade.

Also included in this Denial Letter was a proposed alternate parade route for the same date and start-off time. That proposed route would assemble on Columbus Drive south of Roosevelt Road

and proceed north on Columbus Drive from Roosevelt Road ending at Jackson Drive. The Applicants did not accept this proposed alternate route.

The Applicant file a timely appeal at the Department of Administrative Hearings. This case proceeded to hearing on January 30, 2024.

Summarizing the testimony from this hearing may help one better understand the bases for this Decision.

Secret Service Agent Briggs is a Deputy Coordinator for the Democratic Convention scheduled in Chicago on August 19 through August 22, 2024. He is responsible for the implementation and coordination of security for the convention. In that role he plans and works with eighteen local and federal agencies including the Chicago Police Department. He explained that this Convention and all such Nominating Conventions are designated as a National Special Security Event. This allows the full resources of the Federal Government to be brought to bear in the development of event security and incident management plans to ensure the safety of all participants. At this point this Directive will go into effect 48 hours prior to the Convention.

Agent Briggs stated the Democratic National Convention will bring 6000 delegates, 12-15,000 media personnel and over 50,00 visitors to Chicago. At present, McCormick Place and the United Center are the two principal venues. Additional venues needing updated security such as delegate hotels and motorcade routes will be identified later.

Agent Spriggs is aware of this Parade Permit Application but makes no recommendation on approval of the route. The proposed amended route would be more feasible, but he defers to local authority.

On cross-examination, Agent Spriggs repeated that planning for First Amendment Zones is not done by the Secret Service. The Secret Service establishes perimeters and the locals set up the First Amendment Zones. The exact motorcade routes have not yet been established. He explained that McCormick Place and the United Center are primary sites which will have massive security. Perimeter sites such as Delegate Hotels will not be as secure. They will not have exterior fencing. He does work with the CPD but does not make permit recommendations.

Bryan Gallardo is the Assistant Commissioner of the City of Chicago's Derpartment of Transportation's Public Way Permit Office. His unit processes all public Way Applications including Parade Permit Applications. Since this Parade Permit Application sought to parade in the Central Business District at the time of the Democratic Convention, he responded to it.

Mr. Gallardo identified City Group Exhibit 1, A through C, as the Application For a Parade Using the Public Way submitted by Andy Thayer on January 2, 2024. It stated the parade would assemble at 5:00 pm, start at 6:00pm, end at 8:15pm and disperse at 9:00pm. It listed the requested route and estimated a group of 1000-3000 marchers,

Mr. Gallardo identified City Exhibit 2 as a Google map of the original proposed parade route and City Group Exhibit 3, A through D, as the Amended Application filed by Mr. Thayer with an amended route on January 8, 2024. City Exhibit 4 was identified as a Google Map of the

proposed amended parade route. Mr. Gallardo explained CDOT looks at transportation issues and conflicts with other permits. Copies of the original and amended Applications were sent to other city departments such as the CPD, OEMC, Special Events and Streets and Sanitation.

Mr. Gallardo had an initial phone conversation with Deputy Superintendent Stevens and a later TEAMS meeting with her and Deputy Superintendent O'Connor. In the conversation with Deputy Stevens, she expressed concern that the proposed route contained impactful streets like Michigan Avenue, Wacker Drive and State Street. At the TEAMS meeting the police raised concerns about the resources needed for this Parade due to the Democratic National Convention. Concern about the Parade's impact on multiple bus lines was also discussed.

With the help of the Law Department Mr. Gallardo wrote the denial letter and sent it to Mr. Thayer by e-mail and certified mail. The Application was denied for two reasons. The denial letter contained an Alternate Route for the same date and time.

Mr. Gallardo stated the streets on the proposed routes are heavily trafficked. He used traffic data to determine the businesses and residences that would be affected. The CTA informed him it would need to redirect 13 bus routes using Michigan Avenue, 3 bus routes on Wacker Drive, 8 routes using State Street and 11 bus routes using Washington. Redirecting could be impossible since both Michigan Avenue and State Street would be impacted. Both streets would need to be closed for safety reasons to protect the 1000 to 3000 marchers. CDOT could not provide the resources to handle this proposed parade.

Mr. Gallardo there was an insufficient number of police to handle this parade. The CPD stated there would be traffic in vehicular lanes needing protection and the City needs personnel to protect pedestrians as well as the marchers. That needed police personnel would not be available due to the Democratic National Convention.

Mr. Gallardo explained he did provide a Proposed Alternate Router for the same date and time. This route would start at Roosevelt Road and proceed north to Jackson Boulevard on Columbus Drive. This route would have less impact on traffic and pedestrians but would keep the parade in the Central Business District. Fewer bus routes would be impacted using this route.

On cross-examination, Mr. Gallardo stated he reviewed traffic data from the State of Illinois detailing the number of vehicles on a street. CDOT is striving to minimize impact, not eliminate impact. Acceptable impact is the least amount of impact. He admitted CDOT issues parade permits for Michigan Avenue such as the Festival of Lights Parade which does impact traffic. He pointed out those organizers provide security, jersey walls, marshalls and detour signs. He had no contact with the Secret Service with respect to this application.

On re-direct, Mr. Gallardo testified neither the original application nor the amened application submitted by Mr. Thayer contained any information that his group would provide marshalls, jersey walls or other resources. He repeated that the Democratic National Convention was starting the next day. The city would see up to 50,000 delegates, attendees and visitors. This will affect traffic to hotels and other locations. Traffic will also be impacted by VIP routes.

Daniel O'Connor is the CPD Deputy Chief of Patrol in charge of Large Event Planning which includes Parade Applications. Parade applications are sent to the District Commander and up the chain of command. The date, location, scope and route of each proposed parade are reviewed. CPD then determines how many officers need to be allocated to this parade as well as how many other resources would be needed. These resources include radios, body cameras and means of transportation.

Deputy O'Connor received this Permit Application from CDOT. The parade was scheduled for August 18, 2024, Assembly would start at 5:00 pm, Start at 6:00 pm, end at 8:15 pm and disburse at 9:00 pm. After the original application was reviewed Commander Harris requested an alternate route. An alternate route was provided by the applicant, but the proposed changes were insufficient.

Deputy O'Connor made the decision that the alternate route was too impactful and too great a draw on resources. Thes resources would include significant manpower next to routes that would be used by people from the Democratic National Convention. It would require several hundred officers to close the streets and to affect traffic from streets feeding into the parade route. With the Convention starting, additional officers may be needed to at the parade if the group increases in size. Other resources needed would include radios, barricades, body cameras and means of transporting the officers.

The CPD is tasked with the safety and security of the entire city during the Convention as well as the exterior security for the venues, hotels and delegate meetings. Security will be needed for VIPs and cabinet members. CPD is responsible for the security of 50,000 expected delegates, media personnel and attendees. Other Federal and local law enforcement agencies are working with the CPD, but the CPD allocates the officers. The 11,000 members of the CPD will be working extended hours with no time off and no vacations. The United Center and McCormick Place are the main locations, but the CPD will secure hotels, venues with events, motorcade routes, the airports and the CTA while doing regular patrol in the Districts.

The Deputy stated the alternative route on Columbus from Roosevelt Road to Jackson Boulevard is a reasonable alternative. It gives the marchers visibility in the Central Business District and would require less resources than the proposed alternate route.

On cross-examination, Deputy O'Connor estimated it would take over 500 officers at a minimum to staff the amended alternate route.

Andy Thayer testified his organization's goal in seeking this Parade Permit was to greet the incoming delegates, media and entourage with their First amendment rights. He testified that the proposed alternate route would not allow the Organization to reach its original goals. This route was not near the hotels or the media markets.

The other two witnesses for the applicant, Ms. Lowe and Ms. Keorkunian-Rivers, also expressed their belief the proposed alternate route did not meet the Organization's needs to reach out to people here for the Democratic National Convention and the media. Fewer people would be on that route as it is not adjacent to the loop and is parkland.

## DISCUSSION -

The Applicant contends that its permit application was wrongfully denied because the proposed alternated route was not comparable in public visibility and route to the amended route it submitted. That is not what is required under the Ordinance. Section 10-8-330(i) states, "The alternate route shall to the extent practicable authorize an event that will have comparable public visibility and a similar route, location and date to that of the proposed event." When one examines what options are practicable in this case, it must be examined under the fact that the city is dealing with the fact that the Democratic National Convention will start the day after the proposed parade. With the Convention will come the estimated 50,000 delegates, media personnel and visitors. With the Convention comes the heightened security concerns that the CPD must take into consideration. The original proposed route and the amended proposed route would take this parade through what is possibly the most visible area of the city. It can be argued that no other proposed route could match the amended route for the visibility the applicant seeks. Under these facts allowing a parade to travel at the same date and time from Roosevelt Road to Jackson boulevard down Columbus Drive in the Central Business District is a similar route with comparable visibility to the extent practicable.

The evidence presented from Bryan Gallardo with respect to traffic was credible. It established based on the amount of traffic and the bus disruptions that would flow from the parade that his proposed parade would substantially and unnecessarily interfere with traffic in the area contiguous the activity. His testimony also credibly established there would not be at the time of the proposed parade sufficient city resources to mitigate the disruption.

The evidence presented by Deputy Commissioner O'Connor with respect to the availability of on-duty police officers or other city employees, authorized to regulate traffic, to police the public, and to protect parade participants and non-participants, from traffic-related hazards because of other requirements for police protection during the time of the proposed parade was credible.

It is necessary to again note that the proposed parade, while not taking place during the Democratic National Convention, is scheduled for the night before the start of the Convention. It is reasonable to assume that most of the 50,000 people descending to Chicago will have arrived. The protocols from this event being a National Special Security Event will have been implemented. The 11,000 members of the CPD will be working extended hours. This is an extraordinary situation.

The testimony from the Applicant's witnesses addressed their experience in running large protest parades over a number of years. Their testimony did not address the factual bases set forth in the Denial Letter. To that end the city's testimony on why the parade permit should be denied was not challenged.

## FINDINGS –

Applicant had due and adequate notice of the date, time and location of the requested hearing and of the reasons the Commissioner of Transportation denied this Parade Permit Application.

The City of Chicago met its burden of proof by a preponderance of the evidence that the issuance of this Parade Permit would substantially and unnecessarily interfere with traffic in the area contiguous to the activity, and that there are not available at the time of the proposed parade sufficient city resources to mitigate the disruption pursuant to Section 10-8-330(g)(1) of the Chicago municipal Code.

The City of Chicago met its burden of proof by a preponderance of the evidence that there are not available at the time of this parade a sufficient number of on-duty police officers, or other city employees, authorized to regulate traffic, to police the public, and to protect parade participants and non-participants from traffic-relater hazards because of the other requirements for police protection during the time of the proposed parade pursuant to Section 10-8-330(g)(2).

**DECISION –**

The Findings of the Commissioner of Transportation denying the issuance of this Parade Permit are AFFIRMED.

Dennis Michael Fleming            Dated: February 1, 2024

Administrative Law Judge