# CITY OF CHICAGO DEPARTMENT OF ADMINISTRATIVE HEARINGS
# MUNICIPAL DIVISION

In Re the Denial of the Parade Permit Application of

the March for the People's Agenda.                    24 PA 000004

**BACKGROUND –**

On February 29, 2024, John Metz from the Sponsoring Organization, the Anti-War Committee Chicago, filed an application for a parade permit for the March for the People's Agenda Parade. The requested date for this parade was August 22, 2024. The parade would begin to assemble at 5:00pm at Adams Medill park at 1403 E. 14th Street. The parade would start at 6:00pm and would begin to disband at Adams Merrill Park at 9:00pm. The parade would travel northbound on Ashland, head west on Adams, turn south on Damen, head east on Roosevelt Road back to Adams Merrill park. It was estimated that there would be 1000 marchers.

On March 7, 2024, the Commissioner of the Chicago Department of Transportation denied this parade permit application for these reasons:

1. Under Section 10-8-330 (g)(1) of the Chicago Municipal Code, the Commissioner found that the proposed parade will substantially and unnecessarily interfere with traffic in the area contiguous to the activity, and there are not available at the time of the proposed parade sufficient city resources to mitigate the disruption,
2. Under Section 10-8-330(g)(2) of the Chicago Municipal Code, the Commissioner found that there are not available at the time of the parade a sufficient number of on-duty police officers, or other city employees, authorized to regulate traffic, to protect the public, and to protect parade participants and non-participants from traffic-related hazards because of other requirements for police protection during the time of the proposed parade.

Also included in this denial letter was a proposed alternate route for the same date and start off time. The alternate route would have an assembly time of 5:00pm at on Columbus Drive north of Roosevelt Road. The parade would step-off at 6:00pm and proceed north on Columbus Dr. from Roosevelt Road ending at Jackson Drive. The parade would disband at 8:00pm on Jackson drive between Michigan Avenue and Columbus Drive. The Applicant did not accept this alternate route.

The Applicant filed a timely appeal on March 11, 2024. The Hearing was held on March 18, 2024.

**SUMMARY OF THE PROCEEDING –**

Bryon Gallardo is the Assistant Commissioner in charge of the Public Way Permit office for the Chicago Department of Transportation. Part of his duties include reviewing Parade Permit Applications. Once a parade permit is filed in his office it is e-mailed to the CPD, OEMC, Streets and Sanitation and Special Events. This is to ascertain if these Departments felt there might be a conflict or a problem with resources with respect to the application. He personally reviewed this Application as it was a high-profile application due to the Democratic National Convention

The Democratic National Convention will proceed this August 19 through 22. The main sites are the United Center and McCormick Place. It is estimated 50,000 delegates and others will be in attendance. The proposed date for this parade is August 22, 2024, which is during the convention. He reviewed this Application for traffic conflicts.

The first traffic conflict is that the parade would proceed during the Democratic National Convention. The Convention in itself will present traffic problems which would be exacerbated by this parade.

This parade route would require the closing of Ashland Avenue. Ashland Avenue is the emergency access to the three hospitals located in the Illinois Medical District. Closing Ashland Avenue will impact the ability of emergency vehicles to transport patients to these hospitals. Other cross-streets would also need to be closed, which will push traffic onto other routes. These were the factors for the denial of the permit under Section 10-8-330(g)(1).

He reviewed the response from the Chicago police Department which stated the Chicago Police department had insufficient resources to handle this event. This was the basis for the denial for the permit under Section 10-8-030(g)(2)

The Proposed Alternate Route was scheduled for the same day and time as on the application. It was chosen because it would have a manageable traffic impact.

On cross-examination Mr. Gallardo stated the proposed alternate route was a highly visible route in the Central Business District. It would have less of a traffic impact and the Chicago Police Department could provide the needed support at this location. He received communication from the 12th District Commander objecting to the issuance of this permit. He did consider other locations close to the United Center. The problem with these locations is that the Secret Service will be setting a security footprint outside of the United Center. That footprint has not been announced yet, but it is believed it will be at least a couple of blocks from the United Center. The locations he considered would have been in that security footprint.

Gabriella Shemash is the Area 3 Deputy Chief of Patrol for the Chicago Police Department. She is responsible for patrol operations in Area 3 which includes the 12th district which includes the United Center. While she has overseen large events like the Pride Parade and the Puerto Rican Day Parade, the Democratic National Convention will be larger than anything she has previously managed. The CPD will be responsible for all security outside the security perimeter of the United Center and McCormick Place. This will start about one week prior to the start of the convention.

Thousands of Chicago Police Officers will be assigned to the convention security detail. There are no furloughs and all days off and training sessions have been cancelled during the convention. The CPD is working with the Illinois State Police, the Sheriff's Police and some suburban police departments to coordinate their security efforts. It is anticipated the convention will bring one million people to Chicago. There will be thousands of delegates and their staff, heads of state and the President and Vice-President in attendance.

She received a copy of this Parade Application from the CPD's Special Events Office. Her job was to review and assess what resources would be needed from the CPD. That would include police personnel as well as equipment such as vehicles, radios, cameras and barricades. This would be discussed with the District Commander. She is familiar with the proposed route since she was previously the Commander of the 12th District. The route is within a couple of blocks from the United Center at its closest point. The Illinois Medical district is within the proposed route. It would require hundreds of police officers as well as accompanying resources to close the route. She recommended denial of this application. With the DNC, there was already police personnel and resources assigned. The security perimeter will likely extend to the route. It would require closing three main streets, Asland, Damen and Roosevelt, that lead to the hospital. The time of the parade is a rush hour on a Thursday afternoon that has heavy traffic. This information was discussed with the 12th District Commander who sent the Department of Transportation. The CPD cannot accommodate this route.

On cross, the witness testified there are between 11,000 to 13,000 police officers. She had no input into the alternate proposed route. The alternate route would require less police officers.

The City rested its case.

John Metz is the Co-Chair of the Anti-War Committee, Chicago, who applied for this Parade permit in the name of the March for the People Agenda. It was entitled a march because the people will be moving as they present their political message. Their goal is to present a message against Biden and his policies within the sights and sounds of the Democratic Convention to ensure the federal officers who will be present at the convention to hear their message of opposition to the war in Gaza. He has no previous experience with this type of march but his Co-Chair, Joe Iosbaker, has that experience.

Mr. Metz testified the proposed alternate route is not acceptable since it does not allow the group to convey its political message. It is three miles form the United Center. The President, delegates and federal officers are not in sight or sound The demonstration will not be seen by the people they want to see it.

**DISCUSSION -**

The testimony of Bryan Gallardo with respect to the traffic problems was credible**.** The inherent traffic problems that will arise from the operation of the convention would be exacerbated by issuing this parade permit. Ashland Avenue is the emergency access route for emergency vehicles transporting patients to three different hospitals in the Illinois Medical District. Access to non-emergency hospital patients would also be impacted.

Mr. Gallardo's testimony concerning his investigation of this parade permit was also credible. He followed his usual investigative procedure by notifying the CPD, OEMC, Streets and Sanitation and other city agencies of this parade permit application and sought out their opinion on the issuance of this permit. It was through this investigation that Mr. Gallardo received the email from the 12th District Commander objecting to the issuance of this permit.

The testimony of Gabriella Shemash was also credible. She has a unique perspective on the issuance of this parade permit based on her experience in managing previously the Pride parade and the Puerto Rican Day Parade as well as her being the Commander of the 12th District. She explained the duties of the Chicago Police Department with respect to providing security for the convention while continuing to patrol the city's police districts. She explained that the required resources for this parade would include several hundred police officers as well as the equipment these officers would need. She also reiterated the impact on traffic to the Medical District and the area in general should this route be approved. Her opinion that the CPD would not have the resources to handle this route was uncontradicted.

Both city witnesses testified the proposed alternate route, to the extent practicable, had comparable visibility and had a similar rout, location and date to the proposed parade. This route is in the Central Business District and is a route that the CPD could provide the needed resources.

John Metz is the Co-Chair of the Anti-War Committee and is the person who filed this Parade Permit Application. His organization wants to march against President Biden's policies within the sights and sounds of the Democratic National Convention. The federal officials and elected officials that designed these policies will be present at the United Center and his group wants these officials to hear their message. He rejected the alternative route because it is three miles from the United Center on a tree-lined street. The President and the other officials will not be present in this area. They will not be seen, and their message will not be heard by the President and the other officials and delegates.

The reality of this situation is that the Secret Service will be establishing a security perimeter that will not allow this group or any group to be within the sight and sound of the United Centers that the delegates, the elected officials, other federal officials and the President will see and hear them. It is also unlikely that if this route was approved, those federal officials, delegates, elected officials and the President would be in a location where they could see and hear this group. The ordinance does not require that the alternative route be one that the applicant will accept. The proposed alternate route in this case meets the requirements of the ordinance.

**FINDINGS OF FACT –**

The applicant had due and adequate notice of the date, time and location of the requested hearing and of the reasons stated by the Commissioner of the Department for the denial of this parade permit application.

The Department of Transportation investigated the facts of this application, in consultation with the police department, as required by Municipal Code 10-8-330 (5)(f).

The City of Chicago proved by a preponderance of the evidence that the issuance of this Parade Permit would substantially and unnecessarily interfere traffic in the area contiguous to the activity, and that there are not available at the time of the proposed parade sufficient city services to mitigate the disruption pursuant to Chicago Municipal Code 10-8-330(g)(1).

The City of Chicago proved by a preponderance of the evidence that there are not available at the time of the parade a sufficient number of on-duty police officers, or other city employees authorized to regulate traffic, to police the public, and to protect parade participants and non-participants from traffic-related hazards in light of the other demands for police protection at the time of the proposed parade pursuant to Chicago Municipal Code 10-8-330(g)(2).

The City of Chicago proved by a preponderance of the evidence that the proposed alternate route offered to the Applicant did, to the extent practicable, authorize the conduct of a parade that would have had comparable public visibility and a similar route, location and date to that of the proposed parade.

**DECISION –**

The Finding of the City of Chicago's Commissioner of Transportation denying the issuance of this Parade Permit is AFFIRMED.

Dennis Michael Fleming

Administrative Law Judge                                              Dated: March 20, 2024.