**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BODIES OUTSIDE OF UNJUST LAWS: COALITION FOR REPRODUCTIVE JUSTICE & LGBTQ+ LIBERATION; ANDREW THAYER; KRISTI KEORKUNIAN; and LINDA LOEW, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 24-cv-3563 |
| vs. | ) | |
| | ) | Hon. Thomas M. Durkin |
| THE CITY OF CHICAGO; TOM CARNEY, in his official capacity as Commissioner of the Chicago Department of Transportation; and LARRY SNELLING; in his official capacity as Superintendent of the Chicago Police Department, corporation, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT
PURSUANT TO RULES 12(B)(1) AND (6)**

Defendants City of Chicago, Tom Carney, Commissioner of the Chicago Department of

Transportation, and Larry Snelling, Superintendent of the Chicago Police Department,

respectfully move to dismiss Count I[1] of the Amended Complaint (Dkt. 36) under Fed. R. Civ. P.

12(b)(1) and (6). Plaintiffs previously sought and received a parade permit that allowed them to

march on August 18, 2024, the evening prior to the Democratic National Convention ("DNC")

held in Chicago. The factual allegations in the Amended Complaint concern the prior application

of the City's parade ordinance to Plaintiffs' event, which has since come and gone; Plaintiffs do

not allege that they currently are seeking to conduct another parade or that they have applied for

a permit under the parade ordinance. Plaintiffs nevertheless seek to mount a facial challenge to

the parade ordinance under the First Amendment and permanently enjoin Defendants from

---

[1] Count I is the only remaining count of the Amended Complaint, as Count II was voluntarily dismissed (Dkt. 43).

enforcing the challenged provisions in the future. Plaintiffs lack standing to pursue this prospective relief; the Court should therefore dismiss the case in its entirety for lack of subject matter jurisdiction. Alternatively, the Amended Complaint should be dismissed for failure to state a claim because the Seventh Circuit has upheld the constitutionality of the City's parade ordinance, and Plaintiffs' allegations are insufficient to make out a plausible claim that the ordinance is facially violative of the First Amendment.

## BACKGROUND

Plaintiffs are a coalition of organizations and individuals that sought "just one historic opportunity to present their demands to some of the most influential Democrats in the country" during the 2024 DNC held in Chicago. Am. Compl. ¶ 2. They allege that "Chicago's parade permit ordinance… facilitated Defendants' denial of Convention-related parade permit applications, including [Plaintiffs'] application" for a planned march on August 18, 2024, *id.* ¶ 53, which they describe at length, *id.* ¶¶ 19-45. Plaintiffs ultimately received a permit from the City to conduct a parade on that date, and they have since dismissed their challenge to the denial of their parade permit application, which was originally pled as Count I in their original complaint. Dkt. 35.

The sole cause of action remaining in this case is a facial challenge to the City's parade ordinance. Am. Compl. at 17-18 (Count I). Plaintiffs claim that Municipal Code of Chicago ("MCC") section 10-8-330 (the "parade ordinance"), on its face, violates the First Amendment because it "is not narrowly tailored to any significant government interest," "does not provide adequate alternative avenues for communication," "grants undue discretion to the Commissioner to deny permit applicants and propose alternate routes," and "requires applicants to accept liability for the acts of third parties." *Id.* ¶¶ 74-78. They seek declaratory relief and a permanent

injunction barring Defendants from enforcing any unconstitutional provisions of the ordinance. *Id.* at 18-19.

## STANDARD OF REVIEW

A Rule 12(b)(1) motion to dismiss challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction has the burden to establish that requirements for jurisdiction are met. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014). A Rule 12(b)(6) motion to dismiss tests whether a complaint states a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive dismissal, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Conclusory allegations and legal conclusions are insufficient to withstand dismissal. *Id.*

## ARGUMENT

### I. Plaintiffs Lack Standing.

To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). There is no exception to these requirements for First Amendment facial challenges: "though prudential standing concerns are relaxed in certain facial challenges implicating the First Amendment, a litigant still must demonstrate that she satisfies the constitutional minima essential to establish standing." *Osediacz v. City of Cranston*, 414 F.3d 136, 141 (1st Cir. 2005); *see also Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020) (explaining how a plaintiff bringing a facial challenge under the

First Amendment must show an injury in fact to establish Article III standing), *as amended on denial of reh'g and reh'g en banc* (Sept. 4, 2020).

"[W]hen a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of *future* injury" that is "actual or imminent, not speculative." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (emphasis added); *accord Murthy v. Missouri*, 144 S. Ct. 1972, 1986, 1993 (2024); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) ("[W]hen seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights."). In the context of First Amendment facial challenges, this requires "one of two showings": (1) "a chilling effect on [the plaintiff's] speech that is objectively reasonable, and that he self-censors as a result," or (2) "an intention to engage in a course of conduct arguably affected by a policy, and that [the plaintiff] faces a credible threat the policy will be enforced against him when he does." *Speech First, Inc.*, 968 F.3d at 638.

Here, there is no allegation whatsoever that Plaintiffs' speech is being chilled or that they are engaging in self-censorship due to the parade ordinance. Indeed, despite the existence of the parade ordinance, they energetically pursued their desired parade and message when applying for a permit to march on August 18, 2024. Am. Compl. ¶¶ 20-21, 25, 30. Thus, Plaintiffs' standing to pursue their claim of facial unconstitutionality for exclusively prospective injunctive and declaratory relief rises and falls with the requirement that they sufficiently allege a credible threat of future harm from enforcement of the ordinance against them. *See Speech First, Inc.*, 968 F.3d at 638. They have not done so. Plaintiffs' factual allegations concern past actions: the application of the ordinance to "Convention-related parade permit applications" in general, and their past application for a march on August 18, 2024, in particular. Am. Compl. ¶ 53; *see also*

*id.* ¶¶ 1-6, 19-52, 56, 58, 60. These allegations are insufficient to establish standing to bring a facial challenge seeking prospective relief because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy." *Lujan*, 504 U.S. at 564; *see also Deboard v. BH Urb. Station, LLC*, No. 1:22-CV-02160, 2023 WL 11931165, at *4 (S.D. Ind. Mar. 14, 2023) ("The injury-in-fact here occurred in the past and does not present a real and immediate threat of future harm. As such, [plaintiff] lacks standing to bring injunctive and declaratory relief.").

As to any threat of future harm, Plaintiffs merely allege they "intend[] to continue holding marches and other demonstrations." Am. Compl. ¶ 12-15. These bare assertions are insufficient to establish a "'real and immediate' threat of future violations of their rights." *Scherr*, 703 F.3d at 1074. Plaintiffs do not allege any particular parade they wish to conduct in the future, much less that application of the City's ordinance to a permit application for that parade would result in denial of the permit or the offering of a route that does not comply with the First Amendment. As the Supreme Court has explained, "'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564; *see also id.* at 546 n.2 ("Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is '*certainly* impending.'"). Nor can it be plausibly inferred—without layering on hypotheticals—that Plaintiffs' unspecified intended activities would subject them to a credible threat of enforcement of the particular ordinance provisions they challenge. For example, there is no basis to assume that Plaintiffs' hypothetical future activities would qualify as "large parades," under section 10-8-330(m). *See* Am. Compl. ¶ 61. Plaintiffs have simply not alleged facts showing a threat of real and immediate future

violations of their First Amendment rights under the parade ordinance. Accordingly, the Court should dismiss the Amended Complaint for lack of Article III standing pursuant to Fed. R. Civ. P. 12(b)(1).

## II.    Plaintiffs' Facial Challenge Fails On The Merits.

If the Court declines to dismiss the Amended Complaint for lack of standing, this case should alternatively be dismissed for failure to state a claim. Plaintiffs claim that the parade ordinance is facially unconstitutional because it is (1) not narrowly tailored to any significant governmental interest, (2) does not provide adequate alternative avenues for communication, (3) grants undue discretion to the Commissioner to deny permit applicants and propose alternate routes, and (4) requires applicants to accept liability for the acts of third parties. Am. Compl. ¶¶ 74-78. Plaintiffs' first three asserted grounds fail due to the Seventh Circuit's holding in *MacDonald v. City of Chicago*, 243 F.3d 1021 (7th Cir. 2001), which rejected such challenges to a materially identical prior version of the City's parade ordinance. And to the extent Plaintiffs' fourth objection regarding the indemnification provision is not directly controlled by *MacDonald*, Plaintiffs nonetheless fail to state a claim that the indemnification provision is facially violative of the First Amendment.

### A.    The parade ordinance is a facially constitutional time, place, and manner regulation under binding Seventh Circuit precedent.

Plaintiffs' First Amendment challenge should be dismissed because it is controlled by *MacDonald*, in which the Seventh Circuit upheld a prior version of the City's parade ordinance as a constitutional time, place, or manner restriction. 243 F.3d at 1023. Dismissal under Fed. R. Civ. P. 12(b)(6) is required where binding precedent has upheld a nearly identical law against a similar challenge. *See Price v. City of Chicago*, 915 F.3d 1107, 1109 (7th Cir. 2019) (affirming dismissal of First Amendment challenge).

*MacDonald* addressed a facial First Amendment challenge to a prior, similar version of the City's parade ordinance, MCC § 10-8-330, and it held that the ordinance was "narrowly tailored to serve a significant governmental interest, while leaving open ample channels of communication" and did "not unconstitutionally vest the Commissioner with unfettered discretion." 243 F.3d at 1036. *MacDonald* is therefore directly on point for each of Plaintiffs' first three arguments for facial invalidity.

Plaintiffs' first claim is that the parade ordinance is facially unconstitutional because it is "not narrowly tailored to any significant governmental interest." Am. Compl. ¶ 74. The Seventh Circuit specifically rejected this argument in *MacDonald*, stating in no uncertain terms that "Chicago Ordinance 10–8–330 promotes a significant government interest, primarily the safety of citizens, and specifically the organized, effective, and safe flow of traffic, including emergency vehicles." 243 F.3d at 1034. The court then explained that "[t]he regulation is also narrowly tailored to promote these interests, first by requiring an individualized assessment of the proposed march vis-a-vis these concerns, and second by requiring the City to tailor an alternative route which does not interfere with safety, traffic and emergency services. While this second rationale also ensures ample alternative channels of communication… it assures that the ordinance is narrowly tailored to the City's interests by requiring the next-best route be offered to the applicant. Moreover, absent this ordinance, the City could be in disarray, with marchers interrupting the flow of workers and sightseers, delivery trucks, buses, and emergency vehicles, as well as other marchers deciding to rally at the same place and on the same day. The government's interest in organizing these potential disruptions would 'clearly be achieved less effectively absent the regulation.'" *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799

(1989)). For these reasons, the court "conclude[d] that Section 10–8–330 satisfies the 'narrowly tailored' prong." *Id.*

This analysis applies directly here. Like the version of the parade ordinance reviewed in *MacDonald*, the current version serves the same significant governmental interests, requires an individualized assessment of the impacts of a proposed march on things like orderly and safe traffic flow, and mandates that the City propose a tailored alternative route if the proposed route is denied. *See* MCC §§ 10-8-330(g), (k). "Where the courts have already upheld a similar ordinance because of the governmental interests at stake, a future litigant should not be able to challenge similar governmental interests without showing some distinction at the pleading stage." *Graff v. City of Chicago*, 9 F.3d 1309, 1323 (7th Cir. 1993) (en banc) (plurality opinion). Plaintiffs, though, have not shown such a distinction—nor could they, as the prior version of the ordinance upheld in *MacDonald* required assessment of parade permit applications under materially identical criteria. *Compare MacDonald*, 243 F.3d at 1045-46 (prior version of MCC § 10-8-330(h)) *with* MCC § 10-8-330(g).

Plaintiffs next claim that the ordinance, "[b]y creating a 'one and done' regime… does not provide adequate alternative avenues for communication." Am. Compl. ¶ 75. But the Seventh Circuit specifically held in *MacDonald* that the ordinance's "*require[ment]* [that] the Commissioner… issue an alternative permit whenever he denies [a] permit application as requested," and that such alternative permit "authorize a parade… that is to the extent practicable comparable in public visibility and similar in location and date" *ensures* that "ample alternative channels exist in the event the City denies [a] proposed parade route." 243 F.3d at 1032, 1034. This critical feature is shared by the current ordinance, MCC § 10-8-330(k), and acknowledged by Plaintiffs, *see* Am. Compl. ¶ 57. Plaintiffs' claim regarding inadequate alternative channels of

8

communication is therefore meritless. Plaintiffs have failed to state a claim for *facial* unconstitutionality in any event: Plaintiffs do not allege that the "one and done" system results in inadequate alternative routes in every case, or even a substantial majority of cases. They therefore cannot maintain a facial challenge to the ordinance on this basis. *See Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024) (stating that a law will be struck down as facially violative of the First Amendment "only if the law's unconstitutional applications substantially outweigh its constitutional ones.")

Plaintiffs' third claim is that the ordinance is facially unconstitutional because it "grants undue discretion to the Commissioner to deny permit applicants and propose alternate routes." Am. Compl. ¶ 76. Again, the Seventh Circuit specifically held in *MacDonald* that "the ordinance does *not* provide the City with unconstitutional discretion to review parade-permit applications" because it "specifically and narrowly identifies the reasonable and necessary governmental concerns—traffic flows, traffic hazards, and emergency transportation"—and "limits the Commissioner's discretion by requiring the Commissioner to grant a parade permit, unless specifically articulated public-safety concerns exist." 243 F.3d at 1023 (emphasis added), 1027-28. These same safeguards are maintained in the current version of the ordinance. *See* MCC § 10-8-330(g). Indeed, the precise language that the *MacDonald* court found to provide "limitation on the government's discretion," including "with the use of such words as 'substantially,' 'unnecessarily,' and 'sufficient,'" remains. *See* 243 F.3d at 1027-28; MCC § 10-8-330(g)(1)-(2) ("The parade will not substantially or unnecessarily interfere with traffic…There are available at the time of the parade a sufficient number of on-duty police officers, or other city employees… to police and protect lawful participants … and non-participants.") [2] To the extent a particular

---

[2] The language of the prior ordinance provisions MCC § 10-8-330(h)(1)-(4) examined in *MacDonald* are materially identical to the current ordinance at MCC § 10-8-330(g)(1)-(3) & (5):

decision of the Commissioner may be alleged to have exceeded the bounds of his discretion under the ordinance, such claim could be brought as an as-applied challenge. But Plaintiffs have brought a facial challenge, and given the Seventh Circuit's holding that section 10-8-330 on its face "sufficiently articulates definitive standards… to withstand constitutional scrutiny," *MacDonald*, 243 F.3d at 1029, their facial challenge cannot stand. For these reasons, Plaintiffs' first three asserted bases for its First Amendment facial challenge are all foreclosed by binding Seventh Circuit precedent and should be dismissed.

**B.      Plaintiffs fail to state a claim that the parade ordinance is facially violative of the First Amendment due to its indemnification provision.**

Plaintiffs' fourth and final assertion is that the parade ordinance is facially unconstitutional because it "requires applicants to accept liability for the acts of third parties as a condition of marching on Chicago streets." Am. Compl. ¶ 77. Plaintiffs cite section 10-8-330(m), which provides that organizers of "large parades" "shall indemnify, defend and hold harmless the City of Chicago and its assignees and employees against any additional or uncovered third party claims against the city arising out of or caused by the parade; and shall agree to reimburse the city for any damage to the public way or to city property arising out of or caused by the parade."

---

(1)  The proposed activity will not substantially or unnecessarily interfere with traffic in the area contiguous to the [route] activity, or that, if the activity will substantially interfere with such traffic, that there are available at the time of the proposed activity sufficient city resources to mitigate the disruption;

(2)  There are available at the time of the parade, public assembly or athletic event a sufficient number of peace officers to police and protect lawful participants in the activity and non-participants from traffic related hazards in light of the other demands for police protection at the time of the proposed event or activity;

(3)  The concentration of persons, animals, vehicles or things at the assembly and disbanding areas and along the parade or athletic event route will not prevent proper fire and police protection or ambulance service;

(4)  The event is not being conducted for an unlawful purpose

*MacDonald*, 243 F.3d at 1045 (prior version of MCC at § 10-8-330(h)(1)-(4)). *Compare with* MCC § 10-8-330(g)(1)-(3) & (5).

MCC § 10-8-330(m); Am. Compl. ¶ 61.[3] Because this provision did not appear in the version of the parade ordinance addressed by *MacDonald*, *see* 243 F.3d at 1045-49 (prior version of MCC § 10-8-330), Plaintiffs' claim regarding the indemnification provision is not necessarily controlled by that decision. But it should nevertheless be dismissed on the merits.

First, Plaintiffs' argument that this provision facially violates the First Amendment is not compatible with the holding of *Thomas v. Chicago Park Dist.*, 227 F.3d 921, 923 (7th Cir. 2000), *aff'd*, 534 U.S. 316 (2002). In *Thomas*, the Seventh Circuit upheld the Chicago Park District's event permit regulations, including a requirement that applicants "obtain liability insurance in the amount of $1 million to indemnify the park district against liability arising from a rally that might degenerate into a riot." 227 F.3d at 925. As here, the plaintiffs in *Thomas* claimed that such provision was unconstitutional because it required acceptance of liability for the acts of third parties, arguing specifically that "since violence to person or property incidental to a political rally is likely to arise from the unpopularity of the cause espoused by the rally's sponsors or speakers, the requirement of buying insurance amounts to a 'heckler's veto,' which the cases hold is not a proper basis for restricting free speech." *Id.* The Seventh Circuit rejected this challenge to the regulation, noting that the requirement was not dependent on the controversial nature of an activity but "only on the size of the event and the nature of the facilities involved." *Id.*; *see also MacDonald*, 243 F.3d at 1033-34 (citing *Thomas* for the proposition that no heckler's veto problem was created by a provision that did not "inject content into the City's consideration of the permit application"). Similarly here, the indemnification provision in section 10-8-330(m) by its terms applies to parades based on their size—all "large

---

[3] The Amended Complaint also contains an allegation regarding liability-related language that appears on a permit application form but "does not appear in the Permit Ordinance." Am. Compl. ¶ 62. Any objection to that form's language is not pertinent to Plaintiffs' claim that the *ordinance* is unconstitutional on its face, which is the sole remaining Count in this case.

parades"—not their content. MCC § 10-8-330(m). *Thomas* remains binding in this Circuit, and the Court should find it dispositive here.

Second, as with their other objections to the ordinance, Plaintiffs have failed to state a claim for *facial* unconstitutionality in any event. Plaintiffs have "chose[n] to litigate… [a] facial challeng[e], and that decision comes at a cost." *Moody*, 144 S. Ct. at 2397. Even in the First Amendment context, the Supreme Court has emphasized that it has "made facial challenges hard to win." *Id.* "[T]he question in such a case is whether a law's unconstitutional applications are substantial compared to its constitutional ones," and a law "may be struck down in its entirety… only if the law's unconstitutional applications substantially outweigh its constitutional ones." *Id.* at 2394, 2397.

Plaintiffs' Amended Complaint makes no allegations that could satisfy that standard here. In fact, Plaintiffs' *sole* allegation on this point is that the indemnification provision "requires applicants to accept liability for the acts of third parties as a condition of marching on Chicago streets." Am. Compl. ¶ 77. Plaintiffs have not alleged that the indemnification provision would burden or chill First Amendment expression in a "substantial" majority of cases, as is their burden. *Moody*, 144 S. Ct. at 2394. To the contrary, the Amended Complaint identifies not a single instance in which this provision burdened or chilled speech—not even in Plaintiffs' own case, for they were able to and did apply for a parade permit despite the presence of the challenged ordinance language.

Plaintiffs' lack of allegations on this point is no surprise, because the indemnification provision would not burden or chill speech in a substantial majority of cases. While the parade ordinance applies broadly to parades of many types and sizes, the indemnification provision itself is limited in ways Plaintiffs fail to acknowledge. By its own terms, the provision applies

only to "large parades"—defined as any parade held in the central business district or that is anticipated to require city services exceeding $20,000 in value—which are also required to obtain insurance. MCC § 10-8-330(m), (a). This makes it implausible that the provision would have a chilling effect on a substantial majority of parade applicants, as many parades would not meet this criteria. And courts have held that it is reasonable for municipalities to protect themselves financially from the expenses of allowing marches and assemblies in any event, *see Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322-25 (2002) (affirming constitutionality of park permitting rules designed to "assure financial accountability for damages caused by [an] event")—even by imposing fees and traffic control costs directly on applicants, *e.g.*, *Int'l Women's Day Mar. Plan. Comm. v. City of San Antonio*, 619 F.3d 346, 371 (5th Cir. 2010) ("In this case, San Antonio makes a 'realistic dent' in its budget by protecting itself from having to bear unexpectedly high traffic control expenses for all the various marches and parades that may be held throughout a year. In effect, San Antonio is insuring its annual budget against the unexpected, and we conclude this is permissible."); *Cox v. New Hampshire,* 312 U.S. 569, 577, (1941) (affirming constitutionality of fee imposed on parade organizers for purpose of "meet[ing] the expense incident" to the permitted event). The City's limited requirement that organizers of "large parades" obtain insurance and agree to indemnify the City as specified is a reasonable means of managing the City's financial exposure—and much less burdensome than requiring applicants to pay fees and traffic control costs. At bottom, the indemnification provision is only as broad as necessary to limit the City's exposure to liabilities that could arise directly from parade permittees' use of City property (City streets) for a purpose (a large parade) for which that property was not designed.

Furthermore, the scope of potential liability under this provision is difficult, if not impossible, to evaluate in the abstract, as a facial challenge requires; it would require the Court to engage in "'speculation' about the law's coverage." *Moody*, 144 S. Ct. at 2397. By way of illustration, the indemnification provision's reach could be cabined in multiple ways by state law. For example, in Illinois, "agreements to indemnify against intentional misconduct generally are void as against public policy and unenforceable." *Brennan v. Connors*, 644 F.3d 559, 562 (7th Cir. 2011) (citing *Davis v. Commonwealth Edison Co.*, 61 Ill. 2d 494 (1975)); *see also Davis*, 61 Ill. 2d at 500-01 ("[A]n agreement to indemnify against willful misconduct would, as a general rule, be contrary to public policy and unenforceable though there were no statute to that effect."). Thus, the indemnification provision might not insulate the City from its own intentionally tortious conduct. In addition, the City's general tort immunity under the Local Government and Governmental Employees Tort Immunity Act (the "Tort Immunity Act"), 745 ILCS 10/1-101 *et seq.*, necessarily limits third party claims that could be brought against the City arising out of a parade, including by limiting the scope of a local public entity's duty of care to "intended and permitted" users of property, 745 ILCS 10/3-102(a). For example, a pedestrian using a roadway is not normally an intended and permitted user of the roadway who could sue the City for negligent upkeep of the road service. *Vaughn v. City of W. Frankfort*, 166 Ill. 2d 155, 164 (1995) (holding that "local municipalities owe no duty" under the Tort Immunity Act "to maintain streets and roadways in a reasonably safe condition for pedestrians who choose to cross the street outside the protection of the crosswalks"). These rules could well further limit the scope of potential liability against the City, and thus limit the liability for which a parade applicant would be responsible, making the indemnification provision even less likely to chill speech in a substantial majority of cases.

14

For all these reasons, Plaintiffs' assertion that the parade ordinance is facially unconstitutional due to its indemnification provision fails on the merits. Plaintiffs have not and cannot meet the burden of plausibly alleging the ordinance's "unconstitutional applications are substantial compared to its constitutional ones." *Moody*, 144 S. Ct. at 2394. And if application of the provision burdens speech in any instance, a court can address this when it arises—thereby avoiding unnecessary speculation and allowing the government an opportunity to implement "duly enacted laws… in constitutional ways." *Id.* at 2397 ("For a host of good reasons, courts usually handle constitutional claims case by case, not en masse."). Indeed, as this Court has previously recognized, an "argument [that] identifies some 'uncertainty at the margins'" of a statute is "best left for an as-applied challenge in future adjudication." *Bodies Outside of Unjust L. v. City of Chicago*, No. 24 CV 3563, 2024 WL 3470583, at *3 (N.D. Ill. July 19, 2024) (quoting *Trustees of Indiana Univ. v. Curry*, 918 F.3d 537, 540), *aff'd sub nom. Thayer v. City of Chicago*, 110 F.4th 1040 (7th Cir. 2024). Plaintiffs' facial challenge should be dismissed.

## CONCLUSION

For the reasons stated in this motion, Defendants respectfully request that the Court dismiss Plaintiffs' remaining claim against them with prejudice for lack of subject matter jurisdiction or failure to state a claim.

Date:   October 16, 2024

Respectfully submitted,

ANDREW W. WORSECK
ELLEN W. MCLAUGHLIN
KATHERINE ROSE LAMB
City of Chicago, Department of Law
2 North Lasalle Street, Suite 520
Chicago, Illinois 60602
(312) 744-7129 / 2-5147 / 2-0797
andrew.worseck@cityofchicago.org
ellen.mclaughlin@cityofchicago.org
katherine.lamb@cityofchicago.org
*Attorneys for Defendants*

MARY B. RICHARDSON-LOWRY,
Corporation Counsel for
 the City of Chicago

By:  */s/ Katherine Rose Lamb*
      Katherine Rose Lamb
      Assistant Corporation Counsel
      City of Chicago Department of Law